CROSBY A. HINDS *vs.* EMMA I. STEERE.

Suffolk.     March 24, 1911. — June 22, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Carrier,* Of passengers.  *Automobile.  Negligence.*

The proprietor of a sight-seeing automobile, designed to carry about twenty-five persons, who has a regular stand from which the vehicle starts on regular trips over regular routes at stated hours, for which tickets are placed for sale at various hotels at a stated price for each trip, while he is transporting on such sight-seeing trips persons who have purchased tickets thus offered for sale, is bound to exercise toward his passengers the highest degree of care consistent with the proper transaction of the business; whether or not he technically is a common carrier of passengers.

HAMMOND, J.  This was an action of tort for personal injuries suffered by the plaintiff in a collision on the highway between a "sight seeing automobile" owned by the defendant, in which the plaintiff was riding as a passenger, and an electric car operated by the Boston Elevated Railway Company.  The plaintiff brought an action also against the railway company. The two actions were tried together before a jury and in each a verdict was rendered for the plaintiff.

Upon the question of the care required of the defendant the judge* charged as follows: "With reference to the chauffeur of the automobile, the care is a little different than it is with reference to the motorman of the car.  I have said to you before that a common carrier has to exercise a high degree of care with reference to passengers, and in this case the chauffeur was exercising the care — should have exercised a care with reference to passengers, because these two plaintiffs were passengers on his vehicle, and for the purposes of this case, he should have exercised the high degree of care with reference to their safety, and where the care was with reference to a collision, where the danger and the damage might be very great, it is a degree of care in view of the danger, and of the injury that might be caused by any want of care.  Now,

---

* *Bond,* J.  After his death the defendant's exceptions were allowed by *Pierce,* J.

if he did not exercise that high degree of care, then, so far as Mr. Hinds's case is concerned, you will find for the plaintiff against the owner of the automobile, Mrs. Steere. If he did exercise the high degree of care, then you will find for the defendant in the case against her."

To this part of the charge the defendant excepted, and the case is before us on this exception. The contention of the defendant is expressed in her brief as follows: " In that portion of the charge to the jury excepted to by the defendant, the presiding judge instructed the jury that the driver of the automobile was obliged to exercise the high degree of care required of a common carrier with reference to passengers and that if the jury found that the driver of the automobile did not exercise that high degree of care required of a common carrier of passengers, they should find for the plaintiff; or in other words, that the owner of the automobile was a common carrier of passengers. The defendant contends that she was not a common carrier of passengers within the legal meaning of that term, but was a private carrier only."

It appeared that the automobile was a five ton truck about twenty-five feet in length and ten feet in width; that there were six seats running crosswise, holding from four to five people each, the whole automobile being designed to carry about twenty-five persons; that the motive power was electricity; that through the spring and summer and early fall of 1907 preceding the accident, which took place on September 26, 1907, the automobile had a regular stand or starting place on Dartmouth Street opposite the Public Library in the city of Boston; that from this stand or starting place the automobile usually made three trips daily on pleasant days, taking persons at a stated price for each trip, the general routes of these trips being announced to prospective patrons; that tickets were sold by the chauffeur in the employ of the defendant Steere, and also, at different hotels in the city of Boston, one of which was the Hotel Bellevue, the tickets at that hotel being sold at the newspaper stand; that in pleasant weather the automobile, from the stand on Dartmouth Street, usually made a trip at a given hour in the morning over a certain general route, covering points of interest in Boston; a second trip at two in the afternoon over another general route, covering various points of interest in

Cambridge; and a third trip at four in the afternoon over another general route, through the Back Bay and the Fens in Boston; and that other and different trips sometimes were made; that the plaintiff on the day of the accident had purchased tickets for himself and his wife for the trip to Cambridge, and on the return of the automobile from that trip decided to remain on it for the trip to the Back Bay and the Fens; that he therefore paid his fare for his wife and himself for this trip and was riding on the automobile, as a passenger, at the time of the accident, which occurred about 5.30 P. M. on the return of the automobile from this trip. It further appeared that these trips were sight seeing trips, and it did not appear that the automobile made any stops on any of its trips.

It thus appears that the business in which the defendant was engaged was that of carrying passengers for hire; that she had been engaged in it constantly for several months; that she had a regular stand from which the automobile started and regular routes over which it ran; that by placing the tickets for sale at different hotels she publicly advertised this business and she must be held to have contracted to carry any person who should present himself with a ticket, provided there was no valid objection. The fact, that no stops were made on the way and that the passengers were led by motives of pleasure, curiosity or a desire for information on matters connected with the local, State or national history rather than by any private business exigency or convenience, is of no consequence. The automobile was large, carried many passengers and was wholly within the control of the driver.

It is apparent that this business much more resembled a public than a private carriage of passengers, and, whether in a strictly technical sense the defendant could be regarded as a common carrier of passengers or not, we are of opinion that she was bound to use reasonable care according to the nature of the contract, and that in view of the nature of the business and the peril to life and limb of the passengers likely to arise from an accident, this reasonable care should be defined as the highest degree of care consistent with the proper transaction of the business. See the discussion of reasonable care by Sheldon, J., in *Gardner* v. *Boston Elevated Railway*, 204 Mass. 213, 216, and cases cited; also *Galligan* v. *Old Colony Street Railway*,

182 Mass. 211, and *Warren* v. *Fitchburg Railroad,* 8 Allen, 227, 233.  The language of the presiding judge was sufficiently favorable to the defendant.

*Exceptions overruled.*

*D. T. Montague,* (*M. E. Sturtevant* with him,) for the defendant.

*H. W. Dunn,* for the plaintiff.